AFFIRM; Opinion issued January 11, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01501-CR
### No. 05-11-01502-CR

## KEVEN C. CALDWELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F09-25227-W & F09-72926-W**

## OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion By Justice Fillmore

Keven C. Caldwell was indicted for two aggravated robbery offenses, one enhanced by two

prior convictions and the other enhanced by one prior conviction. A jury convicted Caldwell of both

aggravated robbery offenses. The trial court found the alleged enhancements true and assessed

punishment of forty-five years' imprisonment on each offense. Caldwell asserts (1) the trial court

erred by overruling Caldwell's objection that questions in the juror questionnaire allowed the State

to strike jurors in violation of *Batson v. Kentucky*[2] and by allowing the State to present evidence of

---

[1] The Honorable Martin E. Richter, Retired Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

[2] 476 U.S. 79 (1986).

an extraneous offense of which Caldwell did not have sufficient notice, and (2) the evidence is insufficient to support a finding that Caldwell used or exhibited a deadly weapon in the commission of the offenses. We affirm the trial court's judgment.

## Background

On October 9, 2009, Lauren Smith was working as a loan officer for the Cash Store located at Skillman and Abrams in Dallas, Texas. Caldwell entered the store and pointed a silver automatic handgun with a black handle at Smith and her coworker. Smith was afraid that Caldwell was going to shoot her and her coworker. Smith was pregnant at the time and was afraid she would lose the baby if Caldwell shot her. Caldwell demanded that Smith's coworker put the money from the cash drawers in a bank bag. Caldwell then left with the money and Smith's cellphone.

Because she was afraid of being robbed again at the Cash Store located at Skillman and Abrams, Smith accepted a demotion and began working at the Cash Store located off Broadway in Garland, Texas. On October 27, 2009, Caldwell came into the Cash Store in Garland, put a bank bag on the counter, and "pulled out" the same gun he had used in the previous robbery. A video of the robbery shows Caldwell with a gun in his hand. Smith thought that Caldwell recognized her from the previous robbery and was afraid he was going to shoot her or her coworker. Caldwell demanded that Smith's coworker put the money from the cash drawers into the bank bag. Caldwell then left with the money.

On November 7, 2009, Caldwell was arrested in Forney, Texas. When he was arrested, Caldwell had a silver 9-millimeter automatic handgun with a black pistol grip in his possession. The gun seized from Caldwell was admitted into evidence at trial.

Officer Bo Davenport of the Mesquite police department interviewed Caldwell on March 29, 2010. During the interview, Caldwell admitted he committed the robberies at the Cash Store

-2-

locations in Dallas and Garland. He also admitted using during the robberies the 9-millimeter handgun that was in his possession when he was arrested in Forney.

## Juror Questionnaire

In his first point of error, Caldwell argues the trial court erred by allowing the juror questionnaire to include certain questions that allowed the State to strike potential jurors in violation of *Batson*. Prior to voir dire, Caldwell objected to a number of the questions included in the questionnaire on the ground the questions "had a higher impact on members of the African-American community" and had the "effect of skewing the jury selection process and taking off African-American jurors in violation of *Batson*." The trial court overruled Caldwell's objections. We can overturn a trial court's ruling on a *Batson* challenge only if the ruling was clearly erroneous. *Watkins v. State*, 245 S.W.3d 444, 447–48 (Tex. Crim. App. 2008).

The record contains the venire seating chart and juror information sheets providing basic information about the venire members, including race. The venire consisted of seventeen African-Americans, ten Hispanics, forty-one Caucasians, three Asians, and one "Other." As to those members of the venire within the strike zone, the parties agreed to excuse four African-Americans, five Hispanics, thirteen Caucasians, and two Asians from the panel. The completed juror questionnaires containing the responses of the members of the venire to the objected-to questions are not in the record. A total of eighteen individuals were struck by the State, Caldwell, or both. The record does not reflect which party struck any individual member of the venire, and Caldwell did not object that any of the State's strikes violated *Batson*. The jury consisted of one African-American, ten Caucasians, and one "Other."

Under *Batson*, "[i]t is unconstitutional to strike a person from a jury because of race." *Hassan v. State*, 369 S.W.3d 872, 875 (Tex. Crim. App. 2012). Resolution of a *Batson* challenge

-3-

raised by a defendant is a three-step process:

> (1) the party opposing the strike must establish a *prima facie* case of purposeful discrimination, (2) if that occurs, the party making the strike must offer a race-neutral explanation for the strike, and (3) the trial court must then determine whether the party opposing the strike has established purposeful discrimination.

*Id.* (italics in original). To establish a prima facie case under *Batson*, a defendant must show (1) the State exercised its strikes to exclude members of a cognizable minority group from the venire; and (2) this fact, along with any other relevant facts and circumstances, raise an inference that the State struck the members of the venire because of their race. *See Batson*, 476 U.S. at 96; *Hassan*, 369 S.W.3d at 875 (citing *Batson*, 476 U.S. at 96 and *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005)); *see also Powers v. Ohio*, 499 U.S. 400, 405–06, 416 (1991).

Caldwell asserts that he "is not objecting to the State's actual use of their peremptory strikes, but to the method as to how the State gathers evidence by which to make their peremptory strikes." Even if a *Batson* challenge could be properly asserted against the method the State uses to gather evidence to assist it in exercising its peremptory strikes, the record does not reflect what evidence the State might have gathered. The record does not contain any potential juror's answers to the objected-to questions and does not reflect the State exercised a peremptory strike against any venire member on the basis of race or because the venire member answered any one of the questions in any specific manner.

Caldwell failed to make a prima facie case that the State peremptorily excluded a member of the venire on the basis of race. We, therefore, resolve his first point of error against him.

## Sufficiency of the Evidence

In his second point of error, Caldwell contends the evidence is insufficient to support a finding he used or exhibited a deadly weapon in the commission of the two robberies. We review

–4–

the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames*, 353 S.W.3d at 860. The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury").

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly threatens or places another in fear of imminent bodily injury of death. TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). A person commits aggravated robbery if he uses or exhibits a deadly weapon in the course of committing a robbery. *Id.* § 29.03(a)(2). A firearm is a deadly weapon per se. *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005); *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2012).

Caldwell argues the evidence is insufficient to support the jury's finding a deadly weapon was used during the robberies. However, Smith testified Caldwell used the same "gun" in both

-5-

robberies. She described the gun as a silver automatic handgun with a black handle. The videotape of the second robbery shows Caldwell with a gun in his hand. When Caldwell was arrested in Forney, he had a silver 9-millimeter automatic handgun with a black grip. Caldwell told Davenport that he used the 9-millimeter gun during the two robberies. Testimony using the term "gun" ordinarily is sufficient to authorize the jury to find that a deadly weapon was used. *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. [Panel Op.] 1979). "Absent any specific indication to the contrary at trial, the jury should be able to make the reasonable inference, from the victim's testimony[,] that the 'gun' [that] was used in the commission of a crime, was, in fact, a firearm." *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Caldwell complains that Smith did not identify the gun admitted into evidence as the one used in the robberies. We first note there can be sufficient evidence to support a finding a deadly weapon was used even if the weapon is not introduced into evidence. *Romero v. State*, 331 S.W.3d 82, 84 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. [Panel Op.] 1982)). In this case, however, a gun was introduced into evidence. Although Smith was not asked to identify the gun admitted into evidence as the gun used during the robberies, it was established that the gun was taken from Caldwell when he was arrested in Forney. Caldwell told Davenport that he used that specific gun in the two robberies. Accordingly, the evidence was sufficient to establish the gun admitted into evidence was the gun used in the robberies.

We conclude the evidence is sufficient for a reasonable juror to find Caldwell used or exhibited a deadly weapon during the commission of the two robberies. We resolve Caldwell's second point of error against him.

-6-

## Extraneous Offense

In his third point off error, Caldwell argues the trial court erred by allowing the State to present evidence of an extraneous offense because the State failed to provide proper notice of its intent to introduce the evidence. We review the trial court's decision to admit evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse a decision of the trial court that is within the zone of reasonable disagreement. *Id.* at 343–44.

During the guilt phase of the trial, the State called Officer Michael Hopkins to testify about the gun and other items seized from Caldwell when he was arrested in Forney. Caldwell objected that the evidence pertained to the extraneous offense of unlawful carrying of a weapon and was not admissible under rule of evidence 404(b). Although Caldwell asserted he had not challenged his identification as the robber, the State argued the seized items tended to prove identity. Caldwell did not argue he had failed to receive notice of the State's intent to use the evidence.

The objection made at trial must comport with the error raised on appeal. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993). Caldwell did not raise with the trial court the issue he now argues on appeal. Accordingly, Caldwell has failed to preserve his complaint for our review. TEX. R. APP. P. 33.1(a)(1)(A); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). We resolve Caldwell's third point of error against him.

We affirm the trial court's judgment.

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111501F.U05

–7–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KEVEN C. CALDWELL, Appellant

No. 05-11-01501-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 363rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F09-25227-W).
Opinion delivered by Justice Fillmore, Justices FitzGerald and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 11, 2013.

ROBERT M. FILLMORE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEVEN C. CALDWELL, Appellant

No. 05-11-01502-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 363rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F09-72926-W).
Opinion delivered by Justice Fillmore, Justices FitzGerald and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 11, 2013.

ROBERT M. FILLMORE
JUSTICE